**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| 952-6 W. ADDISON, INC. d/b/a THE SPORTS CORNER BAR & GRILL; BDAJ, INC. d/b/a BUFFALO WILD WINGS; CLASEN'S TAVERN UNION, LLC d/b/a CLASEN'S TAVERN; CUBBY BEAR LOUNGE, LTD. d/b/a THE CUBBY BEAR; DOUBLE D PARTNERS, INC. d/b/a GEORGE STREET PUB; EVAN'S PLACE, INC. d/b/a EVAN'S PLACE; FRALICH, INC. d/b/a BUFFALO WILD WINGS; GOT WINGS, INC. d/b/a BUFFALO WILD WINGS; HART EVENTS, LLC d/b/a SMITH'S CENTRAL GARAGE; HART'S SALLON, LLC d/b/a HART'S SALOON; HWGA, INC. d/b/a BUFFALO WILD WINGS; JACK GIBBONS' GARDENS, INC. d/b/a JACK GIBBONS GARDENS; KATLO, INC. d/b/a PUBLIC HOUSE OF WOODSTOCK; KBF, INC. d/b/a BUFFALO WILD WINGS; MAMA LOUKAS, INC. d/b/a VINES ON CLARK; MCHENRY COBBS, INC. d/b/a D.C. COBB'S MCHENRY; NEW CHATEAU RITZ, INC. d/b/a CHATEAU RITZ; OLIVER'S KANKAKEE, INC. d/b/a OLIVER'S BAR & GRILL; OTRO TAPATIO, INC. d/b/a CAFÉ EL TAPATIO; OVER EASY, INC. d/b/a LA SCAROLA; PASSERO, LLC d/b/a PASSERO; SHEFFIELD-WAVELAND ROOFTOPS, INC.; SOUTH MOON BBQ INCORPORATED d/b/a SOUTH MOON BBQ; ST. NICK'S OF MARKHAM, INC. d/b/a ENVY'S PUB; TERGESTE, INC. d/b/a PELAGO RISTORANTE; and WILD FIVE, INC. d/b/a BUFFALO WILD WINGS, | Court No. *JURY TRIAL DEMANDED* |
| Plaintiffs, | |
| v. | |
| SOCIETY INSURANCE, | |
| Defendant. | |

## COMPLAINT AT LAW

Plaintiffs, 952-6 W. ADDISON, INC., doing business as "The Sports Corner Bar & Grill;" BDAJ, INC., doing business as "Buffalo Wild Wings;" CLASEN'S TAVERN UNION, LLC, doing business as "Clasen's Tavern;" CUBBY BEAR LOUNGE, LTD., doing business as "The Cubby Bear;" DOUBLE D PARTNERS, INC., doing business as "George Street Pub;" EVAN'S PLACE, INC., doing business as "Evan's Place;" FRALICH, INC., doing business as "Buffalo Wild Wings;" GOT WINGS, INC., doing business as "Buffalo Wild Wings;" HART EVENTS, LLC, doing business as "Smith's Central Garage;" HART'S SALLON, LLC, doing business as "Hart's Saloon;" HWGA, INC., doing business as "Buffalo Wild Wings;" JACK GIBBONS' GARDENS, INC., doing business as "Jack Gibbons Gardens;" KATLO, INC., doing business as "Public House Of Woodstock;" KBF, INC., doing business as "Buffalo Wild Wings;" MAMA LOUKAS, INC., doing business as "Vines On Clark;" MCHENRY COBBS, INC., doing business as "D.C. Cobb's McHenry;" NEW CHATEAU RITZ, INC., doing business as "Chateau Ritz;" OLIVER'S KANKAKEE, INC., doing business as "Oliver's Bar & Grill;" OTRO TAPATIO, INC., doing business as "Café El Tapatio;" OVER EASY, INC., doing business as "La Scarola;" PASSERO, LLC, doing business as "Passero;" SHEFFIELD-WAVELAND ROOFTOPS, INC.; SOUTH MOON BBQ INCORPORATED, doing business as "South Moon BBQ;" ST. NICK'S OF MARKHAM, INC., doing business as "Envy's Pub;" TERGESTE, INC., doing business as "Pelago Ristorante;" and WILD FIVE, INC., doing business as "Buffalo Wild Wings" (collectively "Plaintiffs"), by and through their attorneys, DUNCAN LAW GROUP, LLC and ESBROOK LAW, P.C., complaining of the Defendant, SOCIETY INSURANCE (hereinafter "Society" or "Society Insurance"), for their Complaint at Law, pleading in the alternative, state:

## Nature of the Action

1.     This action arises out of Society's failure to provide insurance coverage for the business income Plaintiffs lost because of the ongoing Coronavirus (COVID-19) pandemic and Illinois Governor J.B. Pritzker's Executive Orders related to same.

## The Parties

2.     Plaintiff, 952-6 W. Addison, Inc., doing business as "The Sports Corner Bar & Grill," is an Illinois corporation with its principal place of business at 952 West Addison Street, Chicago, Illinois 60613.

3.     At all times mentioned herein, Plaintiff, 952-6 W. Addison, Inc., owned and operated The Sports Corner Bar & Grill, a tavern located at 952 West Addison Street, Chicago, Illinois 60613.

4.     At all times relevant hereto, Plaintiff, 952-6 W. Addison, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP16009031) that covered the premises identified in the preceding paragraph.

5.     Plaintiff, BDAJ, Inc., doing business as "Buffalo Wild Wings," is an Illinois corporation with its principal place of business at 2012 North State Route 50, Bourbonnais, Illinois 60914.

6.     At all times mentioned herein, Plaintiff, BDAJ, Inc., owned and operated Buffalo Wild Wings, a restaurant located at 2012 North State Route 50, Bourbonnais, Illinois 60914.

7.     At all times relevant hereto, Plaintiff, BDAJ, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17019943) that covered the premises identified in the preceding paragraph.

8.     Plaintiff, Clasen's Tavern Union, LLC, doing business as "Clasen's Tavern," is an Illinois limited liability company with its principal place of business at 17628 Depot Street, Union,

3

Illinois 60180. Clasen's Tavern Union, LLC's members are Daniel Hart, Samantha Benz, Chandra Kanakaris, and Lindsey Spatafora—all of whom are Illinois citizens.

9.     At all times mentioned herein, Plaintiff, Clasen's Tavern Union, LLC, owned and operated Clasen's Tavern, a bar and restaurant located at 17628 Depot Street, Union, Illinois 60180.

10.     At all times relevant hereto, Plaintiff, Clasen's Tavern Union, LLC, had a property and casualty insurance policy issued by Society (Policy Number BP17023304) that covered the premises identified in the preceding paragraph.

11.     Plaintiff, Cubby Bear Lounge, Ltd., doing business as "The Cubby Bear," is an Illinois corporation with its principal place of business at 1059 West Addison Street, Chicago, Illinois 60613.

12.     At all times mentioned herein, Plaintiff, Cubby Bear Lounge, Ltd., owned and operated The Cubby Bear, a tavern located at 1059 West Addison Street, Chicago, Illinois 60613.

13.     At all times relevant hereto, Plaintiff, Cubby Bear Lounge, Ltd., had a property and casualty insurance policy issued by Society (Policy Number BP16010704) that covered the premises identified in the preceding paragraph.

14.     Plaintiff, Double D Partners, Inc., doing business as "George Street Pub," is an Illinois corporation with its principal place of business at 2858 North Halsted Street, Chicago, Illinois 60657.

15.     At all times mentioned herein, Plaintiff, Double D Partners, Inc., owned and operated George Street Pub, a tavern located at 2858 North Halsted Street, Chicago, Illinois 60657.

16.     At all times relevant hereto, Plaintiff, Double D Partners, Inc., had a property and casualty insurance policy issued by Society (Policy Number TRM 525535-9) that covered the

premises identified in the preceding paragraph.

17.     Plaintiff, Evan's Place, Inc., doing business as "Evan's Place," is an Illinois corporation with its principal place of business at 1900 East Touhy Avenue, Des Plaines, Illinois 60018.

18.     At all times mentioned herein, Plaintiff, Evan's Place, Inc., owned and operated Evan's Place, a restaurant located at 1900 East Touhy Avenue, Des Plaines, Illinois 60018.

19.     At all times relevant hereto, Plaintiff, Evan's Place, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP18013392-1) that covered the premises identified in the preceding paragraph.

20.     Plaintiff, Fralich, Inc., doing business as "Buffalo Wild Wings," is an Illinois corporation with its principal place of business at 15888 South La Grange Road, Orland Park, Illinois 60462.

21.     At all times mentioned herein, Plaintiff, Fralich, Inc., owned and operated Buffalo Wild Wings, a restaurant located at 15888 South La Grange Road, Orland Park, Illinois 60462.

22.     At all times relevant hereto, Plaintiff, Fralich, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17019978) that covered the premises identified in the preceding paragraph.

23.     Plaintiff, Got Wings, Inc., doing business as "Buffalo Wild Wings," is an Illinois Corporation with its principal place of business at 20596 South La Grange Road, Frankfort, Illinois 60423.

24.     At all times mentioned herein, Plaintiff, Got Wings, Inc., owned and operated Buffalo Wild Wings, a restaurant located at 20596 South La Grange Road, Frankfort, Illinois 60423.

25.     At all times relevant hereto, Plaintiff, Got Wings, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17019951) that covered the premises identified in the preceding paragraph.

26.     Plaintiff, Hart Events, LLC, is an Illinois limited liability company with its principal place of business at 3315 Pearl Street, McHenry, Illinois 60050. Daniel Hart—an Illinois citizen— is Hart Events, LLC's sole member.

27.     At all times mentioned herein, Plaintiff, Hart Events, LLC, owned and operated Smith's Central Garage, a wedding and event venue located at 3315 Pearl Street, McHenry, Illinois 60050. Plaintiff, Hart Events, LLC, also operated a catering business.

28.     At all times relevant hereto, Plaintiff, Hart Events, LLC, had a property and casualty insurance policy issued by Society (Policy Number BP19001294-1) that covered the premises identified in the preceding paragraph.

29.     Plaintiff, Hart's Sallon, LLC, doing business as "Hart's Saloon," is an Illinois limited liability company with its principal place of business at 9932 Main Street, Hebron, Illinois 60034. Daniel Hart—an Illinois citizen—is Hart's Sallon, LLC's sole member.

30.     At all times mentioned herein, Plaintiff, Hart's Sallon, LLC, owned and operated Hart's Saloon, a bar and restaurant located at 9932 Main Street, Hebron, Illinois 60034.

31.     At all times relevant hereto, Plaintiff, Hart's Sallon, LLC, had a property and casualty insurance policy issued by Society (Policy Number BP17023304) that covered the premises identified in the preceding paragraph.

32.     Plaintiff, HWGA, Inc., doing business as "Buffalo Wild Wings," is an Illinois corporation with its principal place of business at 414 Nelson Road, New Lenox, Illinois 60451.

33.     At all times mentioned herein, Plaintiff, HWGA, Inc., owned and operated Buffalo

Wild Wings, a restaurant located at 414 Nelson Road, New Lenox, Illinois 60451.

34.     At all times relevant hereto, Plaintiff, HWGA, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17019958) that covered the premises identified in the preceding paragraph.

35.     Plaintiff, Jack Gibbons' Gardens, Inc., doing business as "Jack Gibbons Gardens," is an Illinois corporation with its principal place of business at 147th & Oak Park Avenue, Oak Forest, Illinois 60452.

36.     At all times mentioned herein, Plaintiff, Jack Gibbons' Gardens, Inc., owned and operated Jack Gibbons Gardens, a restaurant located at 147th & Oak Park Avenue, Oak Forest, Illinois 60452.

37.     At all times relevant hereto, Plaintiff, Jack Gibbons' Gardens, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP19048347) that covered the premises identified in the preceding paragraph.

38.     Plaintiff, Katlo, Inc., doing business at "Public House of Woodstock," is an Illinois corporation with its principal place of business at 101 North Johnson Street, Woodstock, Illinois 60098.

39.     At all times mentioned herein, Plaintiff, Katlo, Inc., owned and operated Public House of Woodstock, a restaurant located at 101 North Johnson Street, Woodstock, Illinois 60098.

40.     At all times relevant hereto, Plaintiff, Katlo, Inc., had a property and casualty insurance policy issued by Society that covered the premises identified in the preceding paragraph.

41.     Plaintiff, KBF, Inc., doing business as "Buffalo Wild Wings," is an Illinois corporation with its principal place of business at 7301 West 183rd Street, Tinley Park, Illinois 60477.

42.     At all times mentioned herein, Plaintiff, KBF, Inc., owned and operated Buffalo Wild Wings, a restaurant located at 7301 West 183rd Street, Tinley Park, Illinois 60477.

43.     At all times relevant hereto, Plaintiff, KBF, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17019984) that covered the premises identified in the preceding paragraph.

44.     Plaintiff, Mama Loukas, Inc., doing business as "Vines On Clark," is an Illinois corporation with its principal place of business at 3554 North Clark Street, Chicago, Illinois 60657.

45.     At all times mentioned herein, Plaintiff, Mama Loukas, Inc., owned and operated Vines On Clark, a restaurant located at 3554 North Clark Street, Chicago, Illinois 60657.

46.     At all times relevant hereto, Plaintiff, Mama Loukas, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP16007441) that covered the premises identified in the preceding paragraph.

47.     Plaintiff, McHenry Cobbs, Inc., doing business as "D.C. Cobb's McHenry," is an Illinois corporation with its principal place of business at 1204 North Green Street, McHenry, Illinois 60050.

48.     At all times mentioned herein, Plaintiff, McHenry Cobbs, Inc., owned and operated D.C. Cobb's McHenry, a bar and restaurant located at 1204 North Green Street, McHenry, Illinois 60050.

49.     At all times relevant hereto, Plaintiff, McHenry Cobbs, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17023304) that covered the premises identified in the preceding paragraph.

50.     Plaintiff, New Chateau Ritz, Inc., doing business as "Chateau Ritz," is an Illinois corporation with its principal place of business at 9100 North Milwaukee Avenue, Niles, Illinois

60714.

51.     At all times mentioned herein, Plaintiff, New Chateau Ritz, Inc., owned and operated Chateau Ritz, a banquet hall located at 9100 North Milwaukee Avenue, Niles, Illinois 60714.

52.     At all times relevant hereto, Plaintiff, New Chateau Ritz, Inc., had a property and casualty insurance policy issued by Society (Policy Number ROP 472168) that covered the premises identified in the preceding paragraph.

53.     Plaintiff, Oliver's Kankakee, Inc., doing business as "Oliver's Bar & Grill," is an Illinois corporation with its principal place of business at 2122 West Station Street, Kankakee, Illinois 60901.

54.     At all times mentioned herein, Plaintiff, Oliver's Kankakee, Inc., owned and operated Oliver's Bar & Grill, a bar and restaurant located at 2122 West Station Street, Kankakee, Illinois 60901.

55.     At all times relevant hereto, Plaintiff, Oliver's Kankakee, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP16011289) that covered the premises identified in the preceding paragraph.

56.     Plaintiff, Otro Tapatio, Inc., doing business as "Café El Tapatio," is an Illinois corporation with its principal place of business at 9707 Milwaukee Avenue, Glenview, Illinois 60025.

57.     At all times mentioned herein, Plaintiff, Otro Tapatio, Inc., owned and operated Café El Tapatio, a restaurant located at 9707 Milwaukee Avenue, Glenview, Illinois 60025.

58.     At all times relevant hereto, Plaintiff, Otro Tapatio, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17004548) that covered the

premises identified in the preceding paragraph.

59.     Plaintiff, Over Easy, Inc., doing business as "La Scarola," is an Illinois corporation with its principal place of business at 721 West Grand Avenue, Chicago, Illinois 60610.

60.     At all times mentioned herein, Plaintiff, Over Easy, Inc., owned and operated La Scarola, a restaurant located at 721 West Grand Avenue, Chicago, Illinois 60610.

61.     At all times relevant hereto, Plaintiff, Over Easy, Inc., had a property and casualty insurance policy issued by Society (Policy Number ROP 517630-10) that covered the premises identified in the preceding paragraph.

62.     Plaintiff, Passero, LLC, doing business as "Passero," is an Illinois limited liability company with its principal place of business at 3 South Evergreen Avenue, Arlington Heights, Illinois 60005. Passero, LLC's members are Rikki Peota and Scott Peota—both of whom are Illinois citizens.

63.     At all times mentioned herein, Plaintiff, Passero, LLC, owned and operated Passero, a restaurant located at 3 South Evergreen Avenue, Arlington Heights, Illinois 60005.

64.     At all times relevant hereto, Plaintiff, Passero, LLC, had a property and casualty insurance policy issued by Society (Policy Number BP18012207) that covered the premises identified in the preceding paragraph.

65.     Plaintiff, Sheffield-Waveland Rooftops, Inc., is an Illinois corporation with its principal place of business in Chicago, Illinois.

66.     At all times mentioned herein, Plaintiff, Sheffield-Waveland Rooftops, Inc., operated rooftop businesses at 3609-3611, 3617, 3619, 3637, 3639, and 3643-3645 North Sheffield Avenue, Chicago, Illinois 60613 and 1008-1010, 1032, 1038, 1044, and 1048 West Waveland Avenue, Chicago, Illinois 60613. Sheffield-Waveland Rooftops, Inc. offers food and beverage for

on-premises consumption at its rooftop venues (from which customers can watch events at Wrigley Field).

67.     At all times relevant hereto, Plaintiff, Sheffield-Waveland Rooftops, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP16008562) that covered the premises identified in the preceding paragraph.

68.     Plaintiff, South Moon BBQ Incorporated, doing business as "South Moon BBQ," is an Illinois corporation with its principal place of business at 100 East Lincoln Avenue, Hinckley, Illinois 60520.

69.     At all times mentioned herein, Plaintiff, South Moon BBQ Incorporated, owned and operated South Moon BBQ, a restaurant located at 100 East Lincoln Avenue, Hinckley, Illinois 60520.

70.     At all times relevant hereto, Plaintiff, South Moon BBQ Incorporated, had a property and casualty insurance policy issued by Society (Policy Number BP19038579) that covered the premises identified in the preceding paragraph.

71.     Plaintiff, St. Nick's Of Markham, Inc., doing business as "Envy's Pub," is an Illinois corporation with its principal place of business at 3625 West 159th Street, Markham, Illinois 60428.

72.     At all times mentioned herein, Plaintiff, St. Nick's Of Markham, Inc., owned and operated Envy's Pub, a bar located at 3625 West 159th Street, Markham, Illinois 60428.

73.     At all times relevant hereto, Plaintiff, St. Nick's Of Markham, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP18044736) that covered the premises identified in the preceding paragraph.

74.     Plaintiff, Tergeste, Inc., doing business as "Pelago Ristorante," is an Illinois

corporation with its principal place of business at 209 East Delaware Place, Chicago, Illinois 60611.

75.     At all times mentioned herein, Plaintiff, Tergeste, Inc., owned and operated Pelago Ristorante, a restaurant located at 209 East Delaware Place, Chicago, Illinois 60611.

76.     At all times relevant hereto, Plaintiff, Tergeste, Inc., had a property and casualty insurance policy issued by Society (Policy Number ROP551737-7) that covered the premises identified in the preceding paragraph.

77.     Plaintiff, Wild Five, Inc., doing business as "Buffalo Wild Wings," is an Illinois corporation with its principal place of business at 111 Chicago Ridge Mall, Chicago Ridge, Illinois 60415.

78.     At all times mentioned herein, Plaintiff, Wild Five, Inc., owned and operated Buffalo Wild Wings, a restaurant located at 111 Chicago Ridge Mall, Chicago Ridge, Illinois 60415.

79.     At all times relevant hereto, Plaintiff, Wild Five, Inc., had a property and casualty insurance policy issued by Society (Policy Number BP17019965) that covered the premises identified in the preceding paragraph.

80.     At all times mentioned herein, the above-referenced bars, restaurants, taverns, banquet halls, entertainment venues and/or premises contained one or more on-premises dining/drinking areas—consisting of various real and personal property like tables, chairs, utensils, hollowware, and dispensers (among other things)—for dine-in customers.

81.     Defendant, Society Insurance, is a mutual insurance company organized under the laws of the State of Wisconsin, with its principal place of business in Fond du Lac, Wisconsin.

82.     At all times mentioned herein, Defendant, Society Insurance, was licensed to do

business in the State of Illinois, selling property and casualty insurance policies to bars, restaurants, taverns, banquet halls, caterers and other hospitality businesses.

### Jurisdiction and Venue

83.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity among the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

84.     This Court has personal jurisdiction over Society pursuant to Illinois's long-arm statute, 735 ILCS 5/2-209, because this complaint concerns: (1) one or more contracts Society made to insure property and/or risk in Illinois, (2) business that Society transacted within Illinois, and (3) one or more contracts and/or promises Society made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7).

85.     Additionally, because this action presents an actual controversy within this Court's jurisdiction, this Court may declare the legal rights and obligations of the parties hereto under 28 U.S.C. § 2201.

86.     Venue is appropriate because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Illinois and Society "resides" in the Northern District of Illinois. 28 U.S.C. § 1391.

### Factual Allegations

*Coronavirus (COVID-19) and Illinois's Response*

87.     For years, if not decades, the Centers for Disease Control and Prevention ("CDC") and the World Health Organization have been warning about the possibility of an airborne virus that could cause a worldwide pandemic.

88.     On December 31, 2019, Chinese health authorities notified the World Health Organization about a cluster of pneumonia of unknown etiology in Wuhan, China. Christian L.

Althaus and Julien Riou, *Pattern of early human-to-human transmission of Wuhan 2019 novel coronavirus (2019-nCoV), December 2019 to January 2020*, Eurosurveillance (Jan. 30, 2020), https://www.eurosurveillance.org/content/10.2807/1560-7917.ES.2020.25.4.2000058. A few days later, the same authorities identified a novel Coronavirus ("COVID-19") as the cause of the outbreak. *Id.*

89.     Since its discovery, COVID-19—a highly contagious airborne virus—has spread rapidly around the globe, first appearing in the United States and Illinois in January 2020.

90.     Since its arrival, COVID-19 has infected more than 32,825,625 people in the United States and more than 1,368,709 in the State of Illinois. Cases of Coronavirus Disease (COVID-19) in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited May 19, 2021). At least 584,337 people in the United States have died as a result of COVID-19. *Id.*

91.     According to the CDC, everyone is at risk for getting COVID-19 (whose symptoms include cough, fever, chills, difficulty breathing, muscle or body aches, sore throat, loss of taste or smell, diarrhea, headache, fatigue, nausea, vomiting, and congestion) if they are exposed to the virus. People at Increased Risk, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fpeople-at-increased-risk.html (last visited October 20, 2020); Lauren M. Sauer, *What Is Coronavirus*, Johns Hopkins Medicine (Oct. 20, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus.

92.     COVID-19 has a 14-day incubation period, during which infected individuals may be contagious. Coronavirus disease 2019 (COVID-19): Situation Report – 73, World Health

Organization (April 2, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_6#:~:text=The%20incubation%20period%20for%20COVID,occur%20before%20symptom%20onset.

93.     Although a lot remains unknown about the manner in which COVID-19 spreads, COVID-19 is thought to spread mainly from person to person through respiratory droplets and airborne particles produced when an infected person breathes, coughs, sneezes, or talks. Frequently Asked Questions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread (last visited October 20, 2020). These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs. *Id.* Spread is more likely when people are in close contact with one another (within about 6 feet). *Id.*

94.     There is growing evidence that respiratory droplets and airborne particles can remain suspended in the air for minutes to hours. *Id.*; How COVID-19 Spreads, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited October 20, 2020). These droplets and particles can be breathed in by others (even after the infected person has left the space) and travel distances beyond 6 feet in places like restaurants. Frequently Asked Questions, *supra* ¶ 93.; How COVID-19 Spreads, *supra* ¶ 94. In general, indoor environments without good ventilation increase this risk. Frequently Asked Questions, *supra* ¶ 93.

95.     When an infected person coughs, sneezes, or talks, the aforementioned respiratory droplets can also land on objects and surfaces around the person such as tables, doorknobs and handrails.     Q&A     on     coronaviruses,     World     Health

Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited June 30, 2020). People can become infected by touching these objects or surfaces, then touching their eyes, nose or mouth. *Id.*

96. According to the CDC, current evidence suggests that COVID-19 may remain viable (capable of spreading infection) for hours to days on surfaces made from a variety of materials. Cleaning and Disinfection for Households, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (last visited October 20, 2020).

97. A March 2020 study by the CDC found COVID-19 can remain on surfaces used by infected individuals for at least 17 days. Ivan Pereira, *Diamond Princess had traces of coronavirus 17 days after ship emptied: CDC*, ABC News (March 23, 2020, 10:56 p.m.), https://abcnews.go.com/Health/diamond-princess-traces-coronavirus-17-days-ship-emptied/story?id=69755804.

98. The shedding and/or discharge of COVID-19 particles in any building physically transforms the air inside the building, rendering the building unfit for use or occupancy until the particles are removed or become non-viable.

99. The presence of any COVID-19 particles on any premises and/or physical property renders the premises and/or physical property dangerous, unsafe and unusable.

100. The presence of any COVID-19 particles on any premises renders the premises unfit for occupancy and/or uninhabitable.

101. The presence of any COVID-19 particles in any bar, banquet hall, restaurant, tavern, night club, public house, inn, hospitality venue and/or the like renders the facility unfit for its intended purpose.

102.    The presence of any COVID-19 particles in any bar, banquet hall, restaurant, tavern, night club, public house, inn, hospitality venue and/or the like diminishes and/or destroys the facility's utility, value, and/or functionality.

103.    The presence of any people infected with or carrying COVID-19 at any premises renders that premises dangerous and unsafe.

104.    COVID-19 has been declared a pandemic by the World Health Organization.

105.    The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize bars and restaurants.

106.    In response to this pandemic, federal and state authorities have mandated social distancing and limited the number of people that can gather in any setting.

107.    On March 16, 2020, in direct response to the COVID-19 outbreak, and pursuant to the Illinois Emergency Management Agency Act, 20 ILCS 3305/1, *et seq.*, Illinois Governor J.B. Pritzker issued Executive Order 2020-07, ordering "all businesses in the State of Illinois that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—[to] suspend service for and … not permit on-premises consumption." Executive Order 2020-07 (2020). Although Executive Order 2020-07 permitted such businesses to serve food and beverages for off-premises consumption, it mandated that they ensure they have an environment where patrons purchasing food or beverages "maintain adequate social distancing." *Id.*

108.    On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, (1) directing Illinois residents to stay in their homes except when performing "essential" activities, (2) prohibiting gatherings of 10 or more people, (3) requiring "non-essential" businesses to cease operations, and (4) extending Executive Order 2020-07's prohibition of on-premises dining

through April 7, 2020. Executive Order 2020-10 (2020).

109.    On April 1, 2020, Governor Pritzker issued Executive Order 2020-18, extending Executive Order 2020-07's prohibition of on-premises dining through April 30, 2020. Executive Order 2020-18 (2020).

110.    On April 30, 2020, Governor Pritzker issued Executive Order 2020-33, further extending Executive Order 2020-07's prohibition of on-premises dining through May 29, 2020. Executive Order 2020-33 (2020).

111.    On May 29, 2020, Governor Pritzker issued Executive Order 2020-38, allowing Illinois businesses that offer food or beverages for on-premises consumption to re-open for outdoor dining and/or drinking only. *See* 2020-38 (2020); Restore Illinois Phase 3: Restaurants & Bars for Outdoor Dining Guidelines, Illinois Department of Commerce & Economic Opportunity, https://dceocovid19resources.com/assets/Restore-Illinois/businessguidelines3/restaurantbars.pdf (last visited May 20, 2021). Executive Order 2020-07's prohibition of on-premises indoor dining and drinking remained effective. *See* 2020-38 (2020); Restore Illinois Phase 3: Restaurants & Bars for Outdoor Dining Guidelines, *supra* ¶ 111.

112.    On June 26, 2020, Governor Pritzker issued Executive Order 2020-43, allowing Illinois businesses that offer food or beverages for on-premises consumption to reopen for indoor dining and drinking, as long as they maintained a minimum of six feet between tables or other designated patron service areas. *See* Executive Order 2020-43 (2020); Restore Illinois Phase 4: Restaurants & Bar Establishment Safety Guidelines, Illinois Department of Commerce & Economic Opportunity, https://dceoresources-ss-assets.s3.us-east-2.amazonaws.com/public/Restore-Illinois/bridgeguidelines/Phase-4-Restaurant-and-Bars-Guidelines-J011911-r10.pdf (last visited May 20, 2021). Executive Order 2020-43 also prohibited

bars and restaurants from operating at greater than 25% of standing area capacity. *See* Executive Order 2020-43 (2020); Restore Illinois Phase 4: Restaurants & Bar Establishment Safety Guidelines, *supra* ¶ 112.

113. Executive Orders 2020-07, 2020-10, 2020-18, 2020-33, 2020-38, and 2020-43 are not laws or ordinances.

114. Since March 16, 2020, countless Illinois bar and restaurant operators have made claims under their property and casualty insurance policies for the business income they lost as a result of COVID-19 and the resulting Executive Orders.

115. Insurers, including Society, have denied nearly every claim for lost business income—taking the outrageous position that their insureds have not suffered "direct physical loss of or damage to covered property," which insurers like Society claim is a prerequisite for coverage.

*Plaintiffs' All-Risk Insurance Policies*

116. Society sold each Plaintiff a property and casualty insurance policy—identified in Paragraphs 2 - 79 above (collectively the "Policies" or "Businessowners Policies")—it called the "Businessowners Policy." An exemplar "Businessowners Policy" is attached as "Exhibit A."

117. At all times mentioned herein, the Businessowners Policies covered the bars/restaurants/taverns/banquet halls/venues/premises identified in Paragraphs 2 - 80, above.

118. Plaintiffs have performed all of their obligations under their respective Policies, including but not limited to the payment of premiums and the timely reporting of claims. Therefore, Plaintiffs' Policies were in effect at all times relevant hereto.

119. The Businessowners Policies consist of various policy forms, including but not limited to form number "TBP2 (05-15)" (called the "Businessowners Special Property Coverage Form"). *See, e.g.,* Ex. A at 7.

120. Pursuant to the Businessowners Special Property Coverage Form—an "all-risk"

property insurance policy—Society agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at 32.

121. "Covered Cause of Loss" means "Direct Physical Loss unless the loss is excluded or limited under [the Businessowners Special Property Coverage Form]." *Id.* at 33.

122. Neither the Businessowners Special Property Coverage Form nor the Businessowners Policies contain any additional definition of "Covered Cause of Loss."

123. Neither the Businessowners Special Property Coverage Form nor the Businessowners Policies define "Direct Physical Loss."

124. The Businessowners Special Property Coverage Form also contains "Business Income" coverage, under the terms of which Society agreed to:

> pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises. With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:
>
> **(i)** The portion of the building which you rent, lease or occupy;
>
> **(ii)** Any area within the building or at the described premises if that area services, or is used to gain access to, the portion of the building which you rent lease or occupy.

*Id.* at 36-7.

125. According to the Businessowners Special Property Coverage Form:

> Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing necessary operating expenses incurred.

…

suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable if coverage for Business Income applies.

…

"Operations" means your business activities at the described premises.

…

"Period of Restoration" means the period of time that:

**a.** Begins immediately after the time of direct physical loss or damage for Business Income or Extra Expense coverage caused by or resulting from any covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

*Id.* at 37, 62.

126.    The Businessowners Special Property Coverage Form also contains "Extra

Expense" coverage, under the terms of which Society agreed to:

> pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.
>
> With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:
>
> **(a)** The portion of the building which you rent, lease or occupy;
>
> **(b)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

*Id.* at 37.

127. According to the Businessowners Special Property Coverage Form:

> (2) Extra Expense means expense incurred:
>
> (a) To avoid or minimize the suspension of business and to continue "operations":
>
> > (i) At the described premises; or
> >
> > (ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.
>
> (b) To minimize the suspension of business if you cannot continue "operations".
>
> (c) To:
>
> > (i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on
damaged "valuable papers and records"

*Id.* at 37-8.

128. At all times mentioned herein, COVID-19's continuous presence on or around Plaintiffs' insured premises rendered them dangerous and unfit for their intended purpose.

129. On or about March 16, 2020, and in compliance with Executive Order 2020-07, Plaintiffs suspended all dine-in operations at their bars/restaurants/taverns/banquet halls/venues/premises and began suffering an ongoing loss of Business Income.

130. Since March 16, 2020, Plaintiffs have spent money "[t]o avoid or minimize the suspension of business and to continue 'operations'" at their insured premises. For example, Plaintiffs have spent money on, among other things, cleaning products; disinfectant; outdoor dining equipment; and technology to promote social distancing, bolster take-out and delivery services, and/or minimize the risk of COVID-19 contamination and/or exposure.

131. Since March 16, 2020, each Plaintiff has submitted a claim to Society for: (1) the Business Income it has lost because of COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking); and/or (2) the Extra Expenses it has incurred because of COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking).

132. Society has denied coverage for the Business Income/Extra Expense claims submitted by every Plaintiff except Mama Loukas, Inc. and Oliver's Kankakee, Inc.

133. Although Mama Loukas, Inc. submitted a Business Income/Extra Expense claim to Society on or about April 1, 2020, Society has not extended coverage to Mama Loukas, Inc.

134. On information and belief, Society's failure to determine coverage for Mama

Loukas, Inc.'s claim amounts to a denial of said claim.

135.    Although Oliver's Kankakee, Inc. submitted a Business Income/Extra Expense claim to Society on or about February 25, 2021, Society has failed to investigate Oliver's Kankakee, Inc.'s claim and/or determine coverage.

136.    Society has not extended coverage to Oliver's Kankakee, Inc., and on information and belief, Society's failure to determine coverage for Oliver's Kankakee, Inc.'s claim amounts to a denial of said claim.

*The Policies' Lack of a "Virus Exclusion"*

137.    In 2006, Insurance Services Office, Inc. ("ISO")—an insurance advisory organization that develops standard policy forms and files or lodges them with state insurance regulators—authored and sought widespread approval for an "Exclusion For Loss Due To Virus or Bacteria" endorsement (ISO form CP 01 40 07 06) in response to the severe acute respiratory syndrome (SARS) and avian influenza outbreaks of the late 1990's/early 2000's.

138.    In a 2006 memorandum explaining the reason for the "Exclusion For Loss Due To Virus or Bacteria," ISO stated:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property[,] ... cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

139.    Most insurers subsequently included ISO form CP 01 40 07 06 or a version thereof in their "all-risk" commercial property insurance policies.

140.    Neither the Businessowners Special Property Coverage Form nor the Policies contain a "virus exclusion."

## COUNT I – Declaratory Judgment

141.   Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 140 as if fully set forth herein.

142.   Plaintiffs bring this count pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

143.   Because Society has denied Plaintiffs' Business Income and Extra Expense claims, there is an actual controversy between Society and each of the Plaintiffs.

144.   At all times relevant hereto, Plaintiffs' on-premises dining/drinking areas were "covered property at the described premises" under their respective Policies.

145.   As a result of COVID-19 and/or Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking), Plaintiffs suffered the "direct physical loss of" their on-premises dining/drinking areas.

146.   Plaintiffs seek a declaration by this Court that:

(a)   Each Plaintiff suffered "direct physical loss of or damage to covered property at the described premises" as a result of COVID-19 and/or Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking);

(b)   The "direct physical loss of or damage to covered property at the described premises" caused each Plaintiff to "suspen[d]" its "operations;"

(c)   The "suspension of [] 'operations'" caused each Plaintiff's lost Business Income; and

(d)   COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking) are Covered Causes of Loss.

147.   Plaintiffs seek additional declarations that they are entitled to "Business Income" and "Extra Expense" coverage under their respective Policies.

148.   A declaratory judgment regarding Society's obligations to reimburse Plaintiffs for

the lost Business Income and Extra Expenses they incurred because of COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking) will terminate the controversy and clarify the respective rights and obligations of the parties under their respective Policies.

### COUNT II – Breach of Contract ("Business Income" and "Extra Expense" coverage)

149.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 140 as if fully set forth herein.

150.    By purchasing their respective Policies, Plaintiffs each entered into a contract with Society.

151.    Under the Policies' terms, Society agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Ex. A at 32.

152.    Society further agreed to "pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'" as long as: (1) "the suspension" is "caused by direct physical loss of or damage to covered property at the described premises;" and (2) "[t]he loss or damage … [is] caused by or result[s] from a Covered Cause of Loss." *Id.* at 36.

153.    Society also agreed to "pay necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to covered property at the described premises." *Id.* at 37.

154.    As a result of COVID-19 and Executive Order 2020-07, Plaintiffs suffered "direct physical loss of or damage to covered property at the described premises."

155.    The "direct physical loss of or damage to covered property at the described premises" caused Plaintiffs to "suspen[d]" their "operations."

26

156.    The "suspension of operations" caused Plaintiffs to lose Business Income.

157.    COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking) are "Covered Causes of Loss" under the Businessowners Special Property Coverage Form.

158.    Plaintiffs have incurred necessary Extra Expenses they would not have otherwise incurred but for the "direct physical loss of or damage to covered property at the described premises" caused by COVID-19 and/or Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking).

159.    Pursuant to the terms and conditions of the Businessowners Special Property Coverage Form, each Plaintiff made a claim for the lost Business Income and Extra Expenses it incurred because of COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking).

160.    Society has denied each Plaintiff's Business Income and Extra Expense claims.

161.    By denying Plaintiffs' claims, Society breached its contracts with Plaintiffs.

162.    As a result of Society denying Plaintiffs' claims, Plaintiffs have been prevented from recovering lost Business Income and reimbursement for Extra Expenses pursuant to the Businessowners Special Property Coverage Form's terms and conditions, thereby suffering damages.

## COUNT III – Attorneys' Fees, Costs, and Statutory Penalty under 215 ILCS 5/155

163.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 140 as if fully set forth herein.

164.    Based on the Policies' plain language, Society's liability for Plaintiffs' COVID-19-related Business Income and Extra Expense claims was reasonably clear.

165.   Instead of "attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear," Society took steps to mislead its insureds about the nature of their coverage and deter them from submitting claims. 215 ILCS 5/154.6(d).

166.   For example, on or about March 27, 2020, Society's President and CEO, Rick W. Parks, sent Society insureds a letter misrepresenting that their insurance policies contained a "pandemic events" exclusion even though Plaintiffs' Policies do not contain a virus exclusion. A copy of Mr. Parks' March 27, 2020 correspondence is attached as "Exhibit B."

167.   Mr. Parks sent the aforementioned correspondence to discourage policyholders from filing Business Income and Extra Expense claims related to the COVID-19 pandemic.

168.   By misrepresenting "relevant facts or policy provisions relating to coverages at issue," Society, by and through its agent and/or employee, Rick W. Parks, committed an improper claims practice in violation of Illinois Insurance Code Section 154.6(a). 215 ILCS 5/154.6(a).

169.   Society also committed an improper claims practice by "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 215 ILCS 5/154.6(d).

170.   Society's delay in settling Plaintiffs' claims is "vexatious and unreasonable" under Illinois Insurance Code Section 155, 215 ILCS 5/155.

171.   As a result of Society's "vexatious and unreasonable" delay in settling Plaintiffs' Business Income and Extra Expense claims, and other improper claims practices, Plaintiffs are entitled to recover reasonable attorney fees, other taxable costs, and statutory damages under Illinois Insurance Code Section 155. 215 ILCS 5/155(1).

**Request for Relief**

WHEREFORE, Plaintiffs demand the following relief:

A.   A declaration by this Court that Plaintiffs suffered "direct physical loss of or damage to covered property" at the restaurant/premises identified in Paragraphs 2 - 80, above, because of COVID-19 and/or Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking);

B.   A declaration by this Court that the property "loss" or "damage" caused each Plaintiff to "suspen[d]" its "operations;"

C.   A declaration by this Court that the "suspension of operations" caused each Plaintiff's lost Business Income;

D.   A declaration by this Court that COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining/drinking) are Covered Causes of Loss under the Businessowners Special Property Coverage Form;

E.   A declaration by this Court that Plaintiffs are entitled to "Business Income" coverage under the Businessowners Special Property Coverage Form;

F.   A declaration by this Court that Plaintiffs are entitled to "Extra Expense" coverage under the Businessowners Special Property Coverage Form;

G.   Compensatory damages in such amount as demonstrated by the proofs at trial and that the Court deems just and proper;

H.   Punitive damages as to Counts for which such damages are available under applicable law and in an amount that the Court deems just and proper;

I.  Imposition of a constructive trust, an order granting recessionary and injunctive relief and other such equitable relief that the Court deems just and proper;

J.  Costs of litigation, attorneys' fees, and an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds Plaintiffs are entitled to recover against Society, exclusive of all costs; and (2) $60,000.00 per Plaintiff; and

K.  All other appropriate relief.

Dated:  June 2, 2021

Respectfully submitted,

**DUNCAN LAW GROUP, LLC,**

By:___/s/ Robert R. Duncan_____
    Attorney for Plaintiffs

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #6321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
Email: rrd@duncanlawgroup.com
       jp@duncanlawgroup.com

**ESBROOK LAW, P.C.,**

By:___/s/ Christopher J. Esbrook_____
    Attorney for Plaintiffs

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, P.C.**
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
Email: christopher.esbrook@esbrooklaw.com
       michael.kozlowski@esbrooklaw.com